# IN THE COURT OF APPEALS OF IOWA

No. 15-0158
Filed August 19, 2015

**IN THE INTEREST OF V.M.,**
**Minor Child,**

**T.M., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.

A mother appeals from the termination of her parental rights to her child.
**AFFIRMED.**

Christine Branstad of Branstad Law, PLLC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Annette Taylor, Assistant Count Attorney, for appellee State.

Kimberly Ayotte of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Mullins and Bower, JJ.

**DOYLE, P.J.**

A mother appeals from the termination of her parental rights to her child, V.M., born in 2012.[1]  We affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in November 2013, following the mother's arrest for drug possession and theft.  DHS received information the mother was using methamphetamine and marijuana, which was substantiated by a positive hair screen she provided.  The mother also had unaddressed mental health needs.  The child was not receiving adequate care; among other concerns, the mother associated with drug users and used drugs while caring for the child,[2] the child has access to medication in the home, and the mother drove with the child without having a driver's license.  The child was removed from the mother's care.  Upon removal, the child tested positive for methamphetamine.

In December 2013, the child was adjudicated in need of assistance (CINA).  After an initial placement in foster care and then with maternal relatives, the child was placed with her paternal great aunt and uncle in January 2014, where she has remained.

The mother participated in outpatient treatment in December 2013 and January 2014.  After being discharged from treatment, the mother relapsed on methamphetamine and marijuana.  She was also arrested on additional theft

---

[1] The child's father is deceased.

[2] The mother stated she used drugs "a lot of times" while the child was sleeping or napping.

charges. In April, the mother married a man who has a history of substance abuse. The mother missed visits with the child from March until July 2014.

The State filed a petition to terminate parental rights on June 18, 2014. On July 8, 2014, the mother entered inpatient substance abuse treatment. The mother began attending therapy to address her mental health needs. Visits between the mother and child resumed, and the mother attended to the child's needs during visits. In September 2014, the DHS caseworker observed a positive bond between the mother and child and improvements to the mother's mental health, but noted risks remained that "[the mother] will disengage from services again, like she has done in the past," or that "[the mother] has or will relapse and try to care for [the child] under the influence."

During a visit with the child on October 8, 2014, the mother told the caseworker she planned to stay at inpatient treatment "even if [her parental] rights were terminated" because "she was an addict and needs the structure and support that she gets in treatment." The next night, the mother walked out of treatment. She did not tell providers she was leaving and she left without her belongings. Her husband picked her up and she moved in with him at his grandmother's house.

On October 10, the caseworker reported she had "not heard from [the mother]." The mother contacted the caseworker a few days later asking which days visits took place. The mother reported to the caseworker that she was attending three NA meetings a week. The mother's drug test on October 23 came back negative. Visitation resumed, but the caseworker's "October update" noted concerns:

Threats for maltreatment are high with [the mother] as it relates to [the child]'s safety at this time. [The mother] voluntarily left treatment at House of Mercy on October 9th. This resulted in an unsuccessful discharge from the program. [The mother] reported to feeling stressed and overwhelmed in treatment. . . . At this time it appears, [the mother] is not currently managing her mental health or substance abuse properly . . . .

The termination hearing took place on October 31, 2014. The mother testified she had been clean since July 8, the day she entered inpatient treatment. She explained she left inpatient treatment because "it was not working for me. I feel that outpatient is a better fit for me." The mother acknowledged leaving inpatient treatment was not "the best choice with what's going on in my case, but [it was the best choice] for me personally." She acknowledged she had not notified DHS when she left treatment.

The mother testified the child could not be returned to her custody safely "today" because she had "a little bit of work to do with outpatient treatment." She stated, "I think I just need to continue doing therapy once a week and finish my outpatient." The mother testified she had not seen her therapist since leaving inpatient treatment, but she had "talked to her this week" to set up an appointment. She also stated, "I need to get a job so I can get my own apartment again." The mother testified she and the child had an "amazing bond together" and that she called the child "every night." The mother stated, "I just think I need a couple more months to prove it." She further stated:

I'm not a bad mother at all. I just made poor decisions. I made some mistakes in the past, but that does not define who I am today. I think if I had this change that I could really show them what I'm capable of and not mess it up.

The caseworker observed the child's bond with mother grew "stronger" as they had more visits. The caseworker's report also noted the child was "thriving" in her current home placement with her paternal great aunt and uncle and their two children, she was bonded with that family, and the family expressed it would be willing to make a permanent commitment to her through adoption.

Following the termination hearing, the court entered its order terminating the mother's parental rights under Iowa Code sections 232.116(1)(b), (d), (h), and (*l*) (2013).[3] The court observed the mother "has yet to demonstrate that she can establish and maintain sobriety." The court noted the mother minimized the impact her poor-decision making had on her child and "has not demonstrated that she understands that her child needs a permanent home given her age and needs." For example, the court noted the mother's testimony that "she was a good mother even when she was using illegal substances because her child was fed and clothed and put to sleep in bed." The court determined it was not in the best interest for the child to wait additional time for the mother to complete treatment and learn skills to allow her to parent the child safely.

The mother appeals. We conduct a de novo review of termination-of-parental-rights proceedings. *In re P.L.*, 778 N.W.2d 37, 40 (Iowa 2010).

---

[3] The State's petition alleged the mother's parental rights should be terminated pursuant to Iowa Code sections 232.116(1)(b), (d), (h), (i), and (*l*). In the discussion section of its order, the court found clear and convincing evidence to terminate the mother's parental rights under sections 232.116(1)(b), (d), (h), and (*l*). In the final paragraph of its order, however, the court ordered termination of the mother's parental rights pursuant to sections 232.116(1)(a) and (f). Because these subsections were neither alleged by the State in its petition nor otherwise addressed by the court in its order, reference to these subsections in the final paragraph was clearly a typographical error, which is harmless given our de novo review. *See, e.g.*, *In re D.L.C.*, 464 N.W.2d 881, 883 (Iowa 1991) (noting the juvenile court's error was harmless in light of the de novo review of the appellate court). Accordingly, we review the court's order terminating the mother's parental rights under sections 232.116(1)(b), (d), (h), and (*l*).

## II. Discussion

The mother challenges the termination of her parental rights as to all sections relied on by the juvenile court. We may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Termination may be ordered when there is clear and convincing evidence a child age three or younger, who has been adjudicated in need of assistance and removed from the parent's care for six of the last twelve months, cannot be returned to the parent's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h). There is no dispute the first three elements of section 232.116(1)(h) have been met—at the time of termination, V.M. was two years old, adjudicated CINA, and had been out of the mother's custody for six of the last twelve months. *See id.* § 232.116(1)(h)(1)-(3). The mother's claim implicates the fourth element, *see id.* § 232.116(1)(h)(4) ("There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents"), where she contends that at the time of the termination hearing, she "had completed multiple stages of therapy and drug treatment," "appropriately cared for V.M. during visits," and "was seeking employment and communicating effectively with all parties involved."

Contrary to the mother's contention, the record supports the conclusion that the mother is unable to care for the child safely. She admitted she could not care for the child at the time of the termination hearing, but stated she needed time to "continue doing therapy" and "finish" her outpatient treatment.

The problem with the mother's claim is that at the time of the termination hearing, the mother was not participating in any treatment program. The mother had participated in (and completed) outpatient treatment in December 2013 and January 2014, after the child was removed from her care. She relapsed and went months without treatment, contact with the child, or contact with providers. After the State filed a petition to terminate her parental rights, the mother began inpatient treatment and she resumed visits with the child, albeit supervised. However, the mother left this program in mid-October, was unsuccessfully discharged, and was given a "poor" prognosis. In the program's discharge summary, it was noted the mother "appeared in the contemplation stage of change where she knew there was a problem with her use but had yet to learn the skills to incorporate positive agents for change into her life." In light of the fact that the mother reported her "biggest regret" was "starting therapy so late in the case," we are deeply concerned with her decision to leave treatment less than a month prior to termination hearing.

The concerns regarding the mother's substance abuse, poor decision-making, and unaddressed mental health issues were initially raised in November 2013, and continued to exist at the time of the termination hearing in October 2014. During this time, numerous services were offered to the mother with the goal of reunifying her with the child. This child is only two years old and deserves stability and permanency. The mother is unable to assume custody of the child now or at any time in the foreseeable future.[4] Under these facts and

---

[4] Additional time would not correct the situation. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under

circumstances, we conclude there is clear and convincing evidence that grounds for termination exist under section 232.116(1)(h).

Giving primary consideration to the "the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," we conclude termination of the mother's parental rights will best provide the child with the permanency she deserves under section 232,116(2), and termination is not prevented by a consequential factor under section 232.116(3). *See P.L.*, 778 N.W.2d at 40. Accordingly, we affirm termination of the mother's parental rights.

**AFFIRMED.**

---

section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41; *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting the parent's past conduct is instructive in determining the parent's future behavior). Children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). At some point, as is the case here, the rights and needs of the child rise above the rights and needs of the parent. There is no reason to delay the child the permanency she needs and deserves.